**S. FESAGAIGA, Plaintiff**

**v.**

**ALO–PEPE and SU'ESU'E aka William Steffany, Defendants**

## No. 4-1954

## High Court of American Samoa
### Civil Jurisdiction, Trial Division
[Land: "Mafa" near Pago Pago]

## March 15, 1954

ARTHUR A. MORROW, *Chief Judge;* APE, *Associate Judge;* and TAUALA, *Associate Judge.*

OPINION AND ORDER DISMISSING PETITION

Heard before MORROW, *Chief Judge,* and *Associate Judges* APE and TAUALA, on February 10, 11, 1954.

S. Fesagaiga *pro se.*

Sianava R. S. Tago, counsel for Alo-Pepe and Su'esu'e aka William Steffany.

OPINION OF THE COURT

MORROW, *Chief Judge.*

Fesagaiga filed his petition claiming in substance that he and his family members had entered upon and were in possession of a part of the land known as Mafa which had been unoccupied "and growing wild and had been so for over 8 years," that they had "cut down the wild and heavy

119

forest and planted and put it under cultivation a part of the aforesaid land," and that family members of defendants Alo-Pepe and Suesue had cut down and damaged the plaintiff's plantations on the land and threatened his two sons with a shotgun and bush knives. The plaintiff prayed for an injunction restraining the defendants from entering upon the area or interfering with the new plantations on it and for damages. In the alternative plaintiff asked that if the Court should find that the land was the property of the defendants, then he should be awarded the sum of $200.00 for the benefit conferred upon the defendants in cultivating their premises. The land adjoins the highway from Pago Pago to Fagasa and is at the top of the ridge between these two villages. Mafa is a large tract of land on the Pago side of the ridge and only a part of it is involved.

The proper solution of this case hinges on who is the owner of the land. The right of possession follows ownership. Fesagaiga testified that the land was first cleared from the bush in 1918 by the Asuega Family members of which the plaintiff is one. He further testified that the Asuega Family members put in plantations on the land in 1918 and then continued to occupy and use it up to about 1922; that later Fagasa people put in taro and bananas on it; that they vacated it and later the Asuega people put in plantations. He testified that the Fagasa people cultivated the land from 1923 to 1927 when Falealili, an Asuega man, began to cultivate it; that Falealili vacated it about 1930; that it was vacant from time to time and used sometimes by the Fagasa people and at other times by the Asuega people. Finally in September or October 1953, after the land had been vacated for some years, the plaintiff and his aigas cleared it of light bush and vines and put in plantations. During the war the land in dispute was occupied by the U.S. Marines.

Some witnesses for the plaintiff testified that the land was first cleared by the Asuega people before the Government was established in 1900. This does not square with the testimony of Fesagaiga himself who in response to the question "Do you know when this land was first cleared of the big trees, I mean the trees that were growing on it originally before anybody took possession of it?" answered "In 1918 Chief Asuega Afasa, deceased, was a matai of the Asuega Family then, and Talking Chief Falealili also was a junior matai of the Asuega Family while I was living in there in that Family, during then we usually went up to this same property and cut down the wild forest up there." He was then asked "Now, was that the first time the forest had ever been cut on this land?" to which he answered "That is the best of my knowledge, your Honor." A witness for the defendants testified that the land was first cleared by Alo Taisi before the Government was established in 1900. Alo Simanu, who is a co-holder of the title Alo with defendant Alo-Pepe, testified that the tradition in his Family was that Alo Taisi and his brother Alo Feso cultivated the land in dispute before the Government was established. The Court called as a witness Pulu of Pago Pago who is 70 years of age or over. He testified that the land was first cleared from the bush by Alo Taisi and that this occurred before the Government was established in 1900. Pulu has some land immediately below the cliff which cliff is just below the land in dispute and he has been in the position to know the facts in connection with clearing it. Pulu is a member of the Asuega Family. While the evidence is conflicting, we believe that the weight of the testimony favors the view that the land in dispute was first cleared from the wild bush by Alo Taisi and his aiga and that this occurred before the Government was established.

 We have held a number of times that title to bush land is acquired by occupation thereof under claim of own-

ership. In the case of *Soliai v. Lagafua,* No. 5-1949 (H.C. of Am. Samoa) we said "Occupation coupled with a claim of ownership will establish ownership to what was bush land before occupation. See 2 Blackstone 8. The view that the occupant who first takes possession of land with the intention of having it as his own thereby becomes the owner of it is approved in Maine's Ancient Law (3rd Am. Ed.) at p. 238. This doctrine of acquisition of original title by the first occupant, accompanied by a claim of ownership, was approved by this court in the case of *Faataliga v. Fano,* No. 80-1948 (H.C. of Am. Samoa)." In the case of *Soliai v. Levu,* No. 6-1949 (H.C. of Am. Samoa) we said "This court judicially knows that when the members of a Samoan family took possession of bush land and used it in the early days, ownership was claimed not by such members in their own right but in behalf of their matai as owner of the communal family property." And we said in *Leasiolagi v. Fao,* No. 12-1949 (H.C. of Am. Samoa) that "And it was the custom for the matai and members of his family clearing bush land and occupying it to claim it as communal family land and not as the individually owned land of either the matai or the family members occupying it." It is our conclusion from the evidence that the Alo Family became the owner of the land in dispute through first occupancy coupled with a claim of ownership before the Government was established. Of course, the cession of the Islands to the United States Government in 1900 did not affect private land titles. A Samoan family that owned land before the cession owned it after the cession. The effect of the cession was to transfer the sovereignty over the Islands to the United States Government.

■ Having reached the conclusion that the Alo Family owned the land through occupancy coupled with claim of ownership prior to the establishment of the Government, we are next met with the question as to whether or not the

122

plaintiff and his aiga have acquired title to the land by adverse possession. "Continuity of possession is an essential element of adverse possession, and its existence and sufficiency depend upon the acts and conduct of the claimant. . . ." 1 Am.Jur. 877. "In addition to the necessity of having an open, notorious, exclusive, and hostile possession, as stated heretofore, it is also essential that such possession, in order that it may ripen into title, should be shown to have been continuous and uninterrupted for the full statutory period. The moment the possession is broken, it ceases to be effectual, because as soon and as often as a break occurs, the law restores the constructive possession of the owner." I Am.Jur. 877–878. The period for the acquisition of title to land by adverse possession in American Samoa is 20 years. Sec. 907, A. S. Code. According to Fesagaiga's own testimony, the Asuega people did not enter upon the land until 1918. They had possession of it for about four years and then vacated it letting the land grow to bush. In response to the question "Well, now, you say they (Asuega people) quit about after two years, that's about 1920. Now, how long did they let it grow to bush after 1920?" Fesagaiga answered "Possibly four years." In response to the question "Now, then, I believe you said the Asuega people had plantations on there (the disputed land) after they cut the big trees from about 1918 to 1922, that was for about four years and then the Fagasa people came in and plant plantations, is that correct?" Fesagaiga answered "After we left the land, your Honor, during those years the land was vacated there was no plantation then." Then Fesagaiga was asked "Well, how long was it vacated with no plantations at all?" and he answered "I believe about at least five years." He further testified that the Fagasa people began to cultivate the land about 1923 and that "they quit planting taro patches there approximately 1926 or 1927. Then, your Honor, a man by the name of

123

Falealili began—we occupy again the land somewhere around 1930 and plant taro patches there again." He testified that from 1927 to 1930 there were no plantations on the land but that Falealili, the Asuega man, had plantations on it from about 1930 to 1934. Then in answer to the question "Now, then, from 1934 when he (Falealili) quit having plantations, what happened to the land?" he answered "I believe the land was vacated again until somewhere around 1938. I have seen some taro patches there on the particular part of the land owned by someone in Fagasa village. I don't know I did not have a chance to inquire who the family was." Then he was asked "All right, we're up to 1938. Now, then, what happened?" to which he answered "The land—this part of the land toward Pago was vacated again and Fagasa people been upkeep the Fagasa side of the mountain until 1 or 2 years just prior the last World War." No one had plantations on the land during the World War, it being occupied by the U.S. Marines as heretofore stated. It is very apparent from the testimony of Fesagaiga himself that the Asuega people, in whose right Fesagaiga claims the right of possession, did not have continuous possession of the land for 20 years. And it follows under the principles of law heretofore stated that they did not acquire title to it by adverse possession. Our conclusion then is that the disputed land is the property of the Alo Family of which Alo-Pepe and Suesue, the defendants, are both members and of which Alo-Pepe is a matai. There was no evidence of Alo people transferring the right of possession to Fesagaiga. In fact, they disputed his right of possession. Right of possession follows title. It follows, therefore, that the right of possession at the time Fesagaiga entered upon the land in September or October, 1953, and put in plantations was in the Alo people and it is still in them. Therefore, we conclude that the plaintiff is not entitled to an injunction restraining the defendants

from entering upon the disputed land and taking possession of it.

■ While Alo-Pepe herself denied it, the witnesses for Fesagaiga testified that she pushed one of Fesagaiga's sons off the highway when he was about to enter upon the land to put in plantations. Alo-Pepe is a little old lady about 70 years of age. There was no evidence that she hurt the boy in the slightest. Under the law she had the right as matai of the family owning the land in dispute to protect it against trespassers by using reasonable force. Harper on Torts, Sec. 49. The evidence clearly showed that before this alleged assault by Alo-Pepe occurred the Alo people had retaken possession of the disputed land. In fact, they had destroyed some of the plantations put in by Fesagaiga and replaced them with their own plants. It is clear that Alo-Pepe was justified in using reasonable force to prevent Fesagaiga's son from trespassing on Alo land. "On the part of one in legal possession of real or personal property, a privilege to defend the possession thereof exists against intruders who, without the possessor's consent, interfere with such possession by trespass." Harper on Torts, Sec. 49. To the same effect is the Restatement of Torts, Sec. 77. The plaintiff is not entitled to damages under the circumstances even if it be true that Alo-Pepe, the little old lady, did push the young man off the road. The boy wasn't hurt in any way.

■ The plaintiff also claims $2,000 damages for an assault upon his two boys with a shotgun and bush knives. Witnesses for the defendants testified that there was no such assault. Witnesses for the plaintiff testified that there was. However, we think that at most some boys in the Alo Family merely threatened some boys in the Fesagaiga Family with the gun and bush knives and that the acts of the boys never went beyond threats. "An assault is an apparent attempt, by violence to do corporal hurt to

125

another." Sec. 816 Am. Sam. Code. A mere threat to commit violence is far from an attempt to commit violence. "It is a general rule that a cause of action may not be predicated upon mere rudeness or lack of consideration of one person for another. Again, *a mere threat to commit an injury is not an actionable private wrong* (emphasis ours), since it is only the promise of doing something which in the future may be injurious, and may never be carried in effect. Similarly an action will not lie for mere abusive language." 52 Am.Jur. 380. There was no proof whatever of any mental pain or anguish as the result of the threats and no evidence of any actual injury. Furthermore, Fesagaiga's own testimony indicates that the acts of the Alo Family members were no more than threats although these were denied by the Alo Family members. In his testimony Fesagaiga said "And furthermore, my main purpose is to petition the Honorable Court for an injunction against these people because I'm afraid with my sons or family members to continue clearing the premises and maintain it for my new crops because every time we about to enter the land the family members of Alo-Pepe and Suesue using ammunition more like an army to threaten us away from the land."

 We do not think that plaintiff is entitled to compensation for the plantations which he put in on Alo land when he was committing a trespass by putting them in. A trespasser cannot put in plantations on another man's land against his will and then get paid for it. We think that the plaintiff's petition should be dismissed.

### ORDER OF DISMISSAL

Accordingly the petition of the plaintiff is hereby dismissed.

Costs in the sum of $37.50 are hereby assessed against Fesagaiga, the plaintiff, the same to be paid within 60 days.